IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| DARYN LEE W., | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 18-CV-401-JFJ |
| v. | ) |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Daryn Lee W. seeks judicial review of the decision of the Commissioner of the Social Security Administration denying his claim for disability benefits under Title XVI of the Social Security Act ("Act"). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court reverses the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.      Standard of Review**

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the

substantiality test has been met." *Grogan*, 399 F.3d at 1261 (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, the Commissioner's decision stands so long as it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Procedural History and ALJ's Decision

Plaintiff, then a 44-year-old male, filed for Title XVI benefits on June 17, 2010, alleging a disability onset date of June 8, 2010. R. 179-182, 769. Plaintiff's claim for benefits was initially denied and an Administrative Law Judge ("ALJ") held an initial hearing on November 10, 2011, and a second hearing on June 6, 2012. R. 32-84. The ALJ issued a decision on June 29, 2012, denying Plaintiff's claim. R. 11-25. The Appeals Council denied Plaintiff's request for review. R. 1-4. Plaintiff then appealed to the United States District Court, and the Commissioner moved for voluntary remand. R. 869-876. The presiding District Judge granted the Commissioner's motion. R. 873-876. In the meantime, Plaintiff filed a subsequent application for Title XVI benefits on September 4, 2012, and on December 2, 2013, the Oklahoma Disability Determination Service found Plaintiff was disabled beginning on August 1, 2013, when Plaintiff began dialysis treatment. R. 768, 879. On December 23, 2014, the Appeals Council affirmed the finding of disability as of August 1, 2013, and remanded the case back to the ALJ for further proceedings regarding the period preceding August 1, 2013. R. 879-881.

On remand, the ALJ held a supplemental hearing on April 15, 2015. R. 795-840. The ALJ issued a second decision on June 19, 2015, finding at step five that Plaintiff was not disabled prior to August 1, 2013, because he could perform other work. R. 768-786. The Appeals Council denied review, and Plaintiff appealed. R. 757-760; ECF No. 2.

2

The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. R. 771. At step two, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus with peripheral neuropathy; hypertension; morbid obesity; arthritis of the hip; anxiety; and depression. *Id.* The ALJ found Plaintiff's Hepatitis B and C, endocarditis, and kidney disease to be non-severe. *Id.* At step three, the ALJ found that, prior to August 1, 2013, Plaintiff's impairments did not meet or medically equal any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. With respect to Plaintiff's mental impairments, the ALJ found the "paragraph B" criteria of the mental impairment listings were not satisfied, finding that Plaintiff had moderate difficulties in the three areas of (1) activities of daily living, (2) social functioning, and (3) concentration, persistence, or pace; and no episodes of decompensation. R. 773.

The ALJ found that, prior to August 1, 2013, Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of sedentary work as follows:

> [T]he claimant could lift, carry, push and/or pull 10 pounds occasionally and 10 pounds frequently. He could stand and/or walk for two hours out of an eight-hour workday. He could sit for six hours out of an eight-hour workday. He could occasionally climb stairs and ramps, balance, bend or stoop, kneel, crouch, and crawl. He was unable to climb ladders, ropes and scaffolding. He should avoid all exposure to unprotected heights. He could frequently finger, handle, and feel. He could do simple and routine tasks and some moderately complex tasks allowing semi-skilled work with superficial contact with co-workers, supervisors, and the public (superficial defined as contact that a grocery clerk might have with co-workers, supervisors, and the public).

R. 774-775. In support of the RFC, the ALJ discussed Plaintiff's testimony regarding his symptoms; medical expert testimony from Subramaniam Krishnamurthi, M.D.; Plaintiff's medical treatment history; and opinion evidence from four consultative examiners and the state agency reviewers. R. 775-784.

At step four, the ALJ found Plaintiff had no past relevant work. R. 784. At step five, based on the hypothetical posed to the VE and her responses, the ALJ found Plaintiff could perform the

requirements of representative sedentary-exertion occupations such as Touch-Up Screener (SVP-2); Food and Beverage Order Clerk (SVP-2); and Document Specialist (SVP-2).  R. 785.

III.    Issues and Analysis

Plaintiff raises three allegations of error on appeal: (1) the ALJ's finding as to Plaintiff's RFC is not supported by substantial evidence; (2) the ALJ's credibility finding is error as a matter of law and not supported by substantial evidence; and (3) the decision was rendered by an ALJ whose appointment was invalid at the time he rendered his decision.[1]

A.    Plaintiff's RFC is Supported by Substantial Evidence

1.    The ALJ Applied the Appropriate Burden of Proof

Plaintiff contends the ALJ followed an incorrect burden of proof in this case when determining the RFC.  Relying on *Miller v. Chater*, 99 F.3d 972 (10th Cir. 1996), Plaintiff argues that the Commissioner had the burden to establish Plaintiff's disability date, because Plaintiff was already found disabled as of August 1, 2013.  In *Miller*, the claimant applied for both Title II disability insurance benefits ("DIB") and Title XVI supplemental security income ("SSI") benefits, and he was found disabled as of the date he filed his SSI application but not disabled prior to that date, which rendered him ineligible for DIB benefits.  99 F.3d at 975.  The claimant in *Miller* had already established his incapacity to perform his own past work at step four, and the ALJ decided the case at step five, when the burden shifts to the Commissioner to show that the claimant retained the RFC to do other work that exists in the national economy.  *Id.* at 976.  The Tenth Circuit reversed the ALJ's decision, holding the ALJ had used an incorrect legal framework by stating at step five that the "evidence is insufficient to establish that the claimant was under a disability on or before"

---

[1] Neither party has urged the Court to decide the Appointments Clause issue as a threshold matter. In this case, it serves the interests of justice and efficiency to reach the Appointments Clause issue only if there are no other grounds for reversal.  Because the Court finds no other grounds for reversal, the Court reaches the Appointments Clause issue in Part III.C.

the date last insured. *Id.* In rejecting the ALJ's finding, the Tenth Circuit held that the absence of conclusive medical evidence cannot meet the Commissioner's step-five burden, because reliance on the insufficiency of medical evidence effectively shifts the burden back to the claimant. *Id.* Instead, the ALJ should have examined whether the evidence was sufficient for *the Commissioner* to show the claimant could perform other work. *Id.*

Plaintiff argues the facts in *Miller* are "strikingly similar" to those in this case, because both involve applications for DIB and SSI benefits, and because both the claimant in *Miller* and Plaintiff were found disabled for SSI purposes but not DIB. ECF NO. 13 at 8. Plaintiff's argument is both factually and legally flawed. As a factual matter, Plaintiff in this case applied only for SSI benefits, not DIB benefits. Plaintiff's date last insured, which was relevant in *Miller*, is not relevant to Plaintiff's current application for SSI. Therefore, this case is not as "strikingly similar" to *Miller* as Plaintiff alleges.

As a legal matter, Plaintiff misconstrues *Miller's* holding. *Miller* did not hold that if a claimant were found disabled at any time, the burden of proof at every step of the sequential analysis shifts to the Commissioner to prove the claimant was not disabled at a prior time. *Miller* simply applies the well-established five-step analysis with the usual burdens – the claimant bears the burden to show he was disabled during the period of claimed disability at steps one through four, then the burden shifts to the Commissioner at step five to that the claimant retains the RFC to do other work that exists in the national economy. *See Miller*, 99 F.3d at 975 ("Once a claimant has demonstrated, as Mr. Miller has here, that he cannot perform his past work because of his disability, 'the burden shifts to the Secretary to show that the claimant retains the residual functional capacity (RFC) to do other work that exists in the national economy.'") (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993)); 20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are . . . disabled"); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("[T]he Secretary is required to bear

5

[the burden of proof] only if the sequential evaluation process proceeds to the fifth step. . . . It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."). Accordingly, Plaintiff does not demonstrate that the Commissioner bore the burden in this case to provide evidence in support of Plaintiff's RFC assessment. *See Howard v. Barnhart*, 379 F.3d 945, 948-49 (10th Cir. 2004) ("the agency's burden at step five does not include the burden to provide medical evidence in support of an RFC assessment, unless the ALJ's duty to further develop the record is triggered"). Because Plaintiff does not allege a step-five error, but rather an error in establishing the RFC, Plaintiff's burden-shifting argument fails.

## 2. The ALJ Properly Evaluated the Medical Opinion Evidence

Plaintiff argues that the ALJ should have followed the recommendations of Michael Karathanos, M.D., who performed a consultative examination of Plaintiff's neurological status on January 9, 2012. R. 677-682. Plaintiff argues Dr. Karathanos' opinions support his allegations of decreased sensation in the feet and decreased or absent reflexes in the extremities. Plaintiff contends the ALJ erred by relying on the opinions of the testifying medical expert, Dr. Krishnamurthi, over the medical source opinions of Dr. Karathanos.

Plaintiff's arguments are unavailing. As the Tenth Circuit has explained, where there is conflicting evidence in the record, the ALJ is entitled to resolve such evidentiary conflicts. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016). This Court, however, is not permitted to reweigh the evidence. *Id.* Here, the ALJ was entitled to accept the testimony of Dr. Krishnamurthi over the medical source opinions of Dr. Karathanos, and the ALJ adequately explained his reasons for doing so. The ALJ explained in the decision that he assigned "little to no weight" to Dr. Karathanos' medical source opinions, because they were incomplete. R. 782. In particular, Dr. Karathanos did not opine on Plaintiff's lifting/carrying ability, instead stating that Plaintiff

6

"maintains that he cannot lift or carry anything heavier than 5 pound[s]." R. 677. Dr. Karathanos placed question marks in the areas for Plaintiff's standing/walking ability, noting that Plaintiff "maintains that he can walk up to 50 feet." R. 678. In the areas for Plaintiff's use of hands, Dr. Karathanos checked boxes indicating Plaintiff could both "never" and "occasionally" use his right hand for handling and fingering. R. 679. Dr. Karathanos also placed question marks in the areas for Plaintiff's use of feet, noting only "diabetic neuropathy" in this section, as well as question marks in the areas for Plaintiff's postural activities and environmental limitations. R. 679-681. Dr. Karathanos did not complete the narrative portions of the form and did not add objective findings supporting his assessment.

The ALJ assigned great weight, however, to Dr. Karathanos' physical examination, which indicated no intrinsic neurological motor deficit in the upper or lower extremities; stable gait with slight left limp; ability to perform tandem gait and walking on heels and toes with some difficulty; preserved coordination; decreased sensation to pinprick in the toes and decreased sensory sensation at the toes but preserved position sense; and absent reflexes in the lower extremities and 1+ in the upper extremities. R. 675, 776, 782.

The ALJ also gave "great weight" to Dr. Krishnamurthi's opinion regarding Plaintiff's functional limitations, because Dr. Krishnamurthi had the opportunity to review the longitudinal medical evidence. R. 783. The ALJ noted that Dr. Krishnamurthi testified regarding Dr. Karathanos' opinions. Dr. Krishnamurthi testified that a restriction of a five-pound lifting restriction was not Dr. Karathanos' findings, but rather Plaintiff's own report of his ability. Dr. Krishnamurthi testified that restrictions including ability to lift ten pounds frequently and 20 pounds occasionally; sit six hours out of an eight-hour period; and climb steps, ladders, ropes and scaffolding occasionally; and bend, stoop, crawl, crouch, or kneel occasionally were appropriate given the medical evidence. R. 805-806.

7

The ALJ's findings were reasonable and supported by substantial evidence. Even if Dr. Karathanos' opinions could have supported a finding of greater physical limitations in the RFC, the issue for judicial review is whether the ALJ's decision is supported by substantial evidence, not whether Plaintiff's position is supported by substantial evidence. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); 42 U.S.C. § 405(g); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1172 (10th Cir. 2012) ("The ALJ, however, was free to resolve evidentiary conflicts because there is substantial evidence to support his conclusion.").

### B. The ALJ's Credibility Findings are Supported by Substantial Evidence[2]

This Court will not disturb an ALJ's credibility findings if they are supported by substantial evidence, because "[c]redibility determinations are peculiarly the province of the finder of fact." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quotations omitted). Credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (quotations omitted). The ALJ may consider a number of factors in assessing a claimant's credibility, including

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotations omitted). So long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective

---

[2] Effective March 26, 2016, the Social Security Administration issued a new policy interpretation ruling governing the evaluation of symptoms in disability claims. *See* SSR16-3p; Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029 (Mar. 16, 2016) (superseding SSR 96-7p; Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 1996)). The purpose of the new policy is to "eliminat[e] the use of the term 'credibility' from [the] sub-regulatory policy" and "clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p at *1. The ALJ's decision became final on June 19, 2015 and is governed by SSR 96-7p; therefore, the Court uses the term "credibility" throughout this Opinion and Order.

complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 67 (10th Cir. 2012) (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id.*

In the decision, the ALJ granted "little probative weight" to Plaintiff's testimony, because "the dichotomy between the claimant's allegations and the evidence of record as a whole reflects poorly on his credibility." R. 778. Plaintiff argues that the ALJ's analysis supporting this finding does not "properly link the evidence" to the credibility determination. ECF No. 13 at 13. Plaintiff's argument fails. The ALJ described Plaintiff's subjective symptom testimony and adequately explained his reasons for granting the testimony "little probative weight." R. 777-778. Those reasons are linked to discrepancies between Plaintiff's subjective claims and contradictory evidence in the medical record. In particular, the ALJ noted that, despite his numerous complaints and reports of severe limitations, Plaintiff's physical examinations and imaging have remained mainly within normal limits, including normal gait, ability to ambulate without an assistive device, 5/5 grip and great toe strength, and no reinjury or acute disease identified in x-rays of the right hip. R. 778. *See* R. 369-375, 580-587, 674-682. The ALJ noted inconsistencies between Plaintiff's complaints and his history of non-compliance with treatment recommendations, despite quick improvement in symptoms following short-term hospitalizations and a return to prescription medication. R. 778. *See* R. 715-724, 727-734, 1027-1059. The ALJ noted Plaintiff's credibility was affected by his history of lengthy incarceration and admitted drug use after release, as well as his extremely limited mental health treatment. R. 778. *See* R. 249, 727-734. Plaintiff indicated to Dr. Karathanos that he had not received any medical care for his diabetes in a year and a half, which the ALJ noted. R. 674, 780. The ALJ also noted Plaintiff had sporadic work history prior to the alleged disability onset date, "which raised the question as to whether the claimant's continuing unemployment was actually due to medical impairments. R. 778. See R. 588-592, 989-996. Finally, the ALJ noted

9

inconsistencies between Plaintiff's allegations of disabling symptoms and the longitudinal medical evidence. R. 778. The ALJ made adequate credibility findings and linked those findings to substantial evidence in the record. *See Thompson v. Berryhill*, 685 F. App'x 659, 664 (10th Cir. 2017) (where ALJ evaluates a claimant's subjective complaints and explains evidence he relies on, "[n]othing more is required" for credibility analysis).

Plaintiff complains that the ALJ's credibility analysis did not adequately account for Dr. Karathanos' examination findings that Plaintiff's reflexes were absent in the lower extremities and decreased in the upper extremities. *See* R. 675. Plaintiff argues this finding supported Plaintiff's neuropathy. However, the ALJ noted Dr. Karathanos' findings in the decision. R. 780. The ALJ further noted, in support of his credibility determination, that Dr. Karathanos' examination showed no intrinsic neurological motor deficit in the upper or lower extremities, as well as normal gait. R. 778. *See* R. 675. Plaintiff simply invites the Court to re-weigh the evidence, which is not permitted. *See Hackett*, 395 F.3d at 1172; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo") (quotation and alterations omitted). In sum, the ALJ conducted an adequate credibility analysis, linking his credibility findings to specific evidence in the record. Plaintiff has failed to identify any reversible error in relation to the ALJ's credibility analysis.

### C. Plaintiff Timely Raised the Appointments Clause Challenge

For purposes of this motion, the Commissioner concedes that the ALJ who decided Plaintiff's case was not validly appointed under the Appointments Clause of the U.S. Constitution. The Commissioner only disputes whether Plaintiff's challenge was timely.

"[O]ne who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief." *Lucia v. S.E.C.*, __ U.S. ___, 138 S. Ct. 2044,

2055 (2018) (internal quotations omitted). In *Lucia*, the plaintiff raised the challenge "before the [Securities and Exchange Commission], and continued pressing that claim in the Court of Appeals and this Court." *Id.* Seizing on this language, the Commissioner argues Plaintiff's challenge is not "timely," because it was not made "at any point in the underlying administrative proceedings." ECF No. 15 at 9. However, as recently made clear by the Tenth Circuit, "underlying securities laws expressly require issue exhaustion." *Malouf v. S.E.C.*, 933 F.3d 1248, 1256 (10th Cir. 2019) (holding that Appointments Clause challenge was forfeited due to failure to comply with mandatory exhaustion requirement). In contrast, no Social Security laws or regulations require issue exhaustion. *Sims v. Apfel*, 530 U.S. 103, 108 (2000) (explaining that, although statutes or agency regulations commonly require issue exhaustion in administrative appeals, no statute or SSA regulations do so). This has not changed in the nineteen years following *Sims*. Therefore, *Lucia* does not clearly or directly answer the timeliness question in the Social Security context. *See Sims*, 530 U.S. at 109-10 (explaining that, in absence of statute or regulation, courts must carefully consider type of agency proceedings before requiring issue exhaustion).

The question presented is whether a Social Security claimant must exhaust the Appointments Clause issue before the ALJ in order to raise it on appeal to a district court.[3] No circuit court has reached this precise question. Most lower courts addressing the question have held that the Appointments Clause issue is forfeited if not raised. *See, e.g., Fortin v. Comm'r of Social Security*, 372 F. Supp. 3d 558, 567 (E.D. Mich. 2019) (holding that Appointments Clause challenge was forfeited because not raised before the ALJ and providing thorough explanation of both sides of issue) (string-citing twelve cases supporting majority position). A minority of courts, employing varying rationales, have held that an Appointments Clause challenge may be raised for the first time

---

[3] As explained below, Plaintiff was not required to exhaust the Appointments Clause issue before the Appeals Council in order to preserve it. *See Sims*, 530 U.S. at 112. The Commissioner's argument only succeeds, therefore, if Plaintiff was required to exhaust the issue before the ALJ.

before the district court. *See, e.g., Kellett v. Berryhill*, No. CV 18-4757, 2019 WL 2339968, at *7 (E.D. Pa. June 3, 2019) (relying on *Sims*' reasoning and "futility of objecting before an ALJ who was powerless to decide a constitutional question"); *Bradshaw v. Berryhill*, 372 F. Supp. 3d 349, 352-362 (E.D.N.C. 2019) (relying on *Sims*' reasoning; separation of powers concerns; reluctance to apply exhaustion requirements to constitutional issues; and courts being "poorly equipped" to fashion an issue-exhaustion requirement for SSA proceedings); *Bizarre v. Berryhill*, 364 F. Supp. 3d 418, 420-26 (M.D. Pa. 2019) (limiting rationale to failure to exhaust constitutional issues and issuing alternative holding that, even if forfeited, court would exercise discretion to excuse failure to exhaust). Within the Tenth Circuit, courts are split. *Compare, e.g., Pearson v. Berryhill*, No. 17-4031-SAC, 2018 WL 6436092 (D. Kan. Dec. 7, 2018) (issue forfeited), *with Kim L. M. v. Saul*, No. 18-CV-418-FHM, 2019 WL 3318112, at *6 (N.D. Okla. July 24, 2019) (issue not forfeited) (holding that *Sims*' reasoning logically extends to other steps in the SSA process).[4]

The Court joins the minority position and holds that a social security claimant does not forfeit an Appointments Clause challenge by failing to exhaust the issue before the ALJ. First, this Court can discern no principled basis for distinguishing *Sims* from the instant case. In *Sims*, the Court held that that a claimant need not exhaust issues in a request for review by the Social Security Appeals Council in order to preserve issues for appeal to a district court. *Sims*, 530 U.S. at 112. Although the Court declined to reach the question of "whether a claimant must exhaust issues before the ALJ," *id.* at 107, the underlying reasoning in *Sims* applies to the entire Social Security process.

---

[4] The Commissioner appealed the *Kim L.M.* decision to the Tenth Circuit, and it is currently pending on appeal. Neither party moved the Court to stay this decision pending resolution of that appeal.

Writing for the Court, Justice Thomas first explained that the rationale for requiring issue exhaustion is "much weaker" when the "administrative proceeding is not adversarial." *Id.* at 110.[5] Writing for a plurality, he reasoned that the "differences between courts and agencies are nowhere more pronounced than in *Social Security proceedings*" and that "*Social Security proceedings* are inquisitorial rather than adversarial." *Id.* at 110-11 (emphasis added). The plurality further reasoned: "It is *the ALJ*'s duty to investigate the facts and develop the arguments both for and against granting benefits . . . and the Council's review is *similarly broad*." *Id.* at 110-11 (emphasis added). In concluding that the analogy to judicial proceedings is at is weakest in the Social Security context, the plurality explained that "[t]he Council, not the claimant, has primary responsibility for identifying and developing the issues." *Id.* at 112. One could easily substitute "the ALJ" for the "Council" in the preceding sentence. The plurality also explained that SSA regulations make "quite clear" that the entire "SSA," not merely the Appeals Council, conducts its review in a nonadversarial and informal way. *Id.* at 111. Further, like the Appeals Council forms, the ALJ-level forms also require claimants to provide only a minimal amount of information, indicating the ALJ does not depend significantly on claimants to identify issues for review. *See Bradshaw*, 372 F. Supp. 3d at 356-57 (explaining similarity of requirements in forms). The overall reasoning in *Sims* indicates that the SSA regulatory scheme cannot be parsed into adversarial and non-adversarial stages for purposes of issue exhaustion.[6] *But see Marilyn R. v. Saul*, No. 18-CV-4098, 2019 WL 4389052, at

---

[5] *Sims* is a plurality opinion, with Parts I and II-A garnering five votes and Part I-B garnering only four.

[6] The law review article cited by the *Sims* plurality does not distinguish between the two levels of review and argues against any issue-exhaustion requirement in Social Security cases. *See* Jon C. Dubin, *Torquemada Meets Kafka: The Misapplication of the Issue Exhaustion Doctrine to Inquisitorial Administrative Proceedings*, 97 Colum. L. Rev. 1289, 1341-42 (1997) (reasoning that "issue exhaustion is doctrinally and functionally incompatible with the SSA's inquisitorial model and operating reality" and that "courts should reject the doctrine's application to SSA proceedings"). That author reasoned that "[t]he degree of agency judicialization required to justify issue exhaustion would undermine the mass justice efficiency of the SSA's inquisitorial model, place substantial

*4 (C.D. Ill. Sept. 13, 2019) (reasoning that claimants "have more responsibility for identifying the issues" at the ALJ level and that the ALJ level "is more adversarial").

Second, courts are not equipped to design a fair, well-considered issue-exhaustion requirement for Social Security proceedings. *See Bradshaw*, 372 F. Supp. 3d at 360. In this case, the Commissioner's arguments are not limited to the Appointments Clause context. *See* ECF No. 15 at 12 (arguing that courts should find forfeiture for any and all "arguments [a claimant] had not presented to the ALJ"). Yet as explained in *Bradshaw*, any judicially imposed issue-exhaustion requirement implicates several considerations: (1) the precise definition of "issue" or "argument"; (2) whether there should be an exception for constitutional issues;[7] (3) whether it should apply to all claimants or only those represented by counsel; and (4) whether failure to raise is an absolute bar or whether there are exceptions for newly discovered evidence. *Bradshaw*, 372 F. Supp. 3d at 360-61. Further, the exhaustion requirement requested by the Commissioner would impose an exhaustion requirement only at the ALJ level, and not at the subsequent Appeals Council level. *See Kim L.M.*, 2019 WL 3318112, at *6. It seems illogical to require exhaustion before the ALJ, but then excuse exhaustion before the final level of agency review. In short, the Court is wary of injecting an imprecise issue-exhaustion requirement into the complex and heavily regulated Social

---

strain on an already overburdened and dysfunctional adjudicative bureaucracy, and still fail to protect the judicial review rights of claimants lacking counsel in agency proceedings." *Id.*

[7] Some courts in the minority have found the constitutional nature of the question to weigh against forfeiture, essentially because courts should be most reluctant to relinquish their ability to decide constitutional questions. *See Bradshaw*, 372 F. Supp. 3d at 362; *Bizarre*, 364 F. Supp. 3d at 424. Some courts in the majority have found this nature to weigh in favor of forfeiture, because constitutional issues are not part of the typical "inquisitorial process." *See Marilyn R.*, 2019 WL 4389052, at *5 (reasoning that ALJ has no occasion to identify an Appointments Clause issue unless identified by the claimant); *Fortin*, 372 F. Supp. 3d at 565 (reasoning that where "the challenge is to the structural integrity of the process itself, the adversarial nature of the litigation reemerges").

Security scheme, particularly where the Supreme Court failed to do so for the highest level of agency review.

Finally, language in Tenth Circuit law favors the minority position. In *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (emphasis added), the Tenth Circuit stated:

> Indeed, there is nothing in the record before us to indicate that the conflict was raised until the district court proceeding that commenced two years after the ALJ hearing. The Supreme Court has ruled, however, that a plaintiff challenging a denial of disability benefits under 42 U.S.C. § 405(g) *need not preserve issues in the proceedings before the Commissioner or her delegates. See Sims v. Apfel*, 530 U.S. 103, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000).

The Commissioner in this case did not address *Hackett*. In other cases, the Commissioner has argued this holding is limited to issues that an ALJ has "an affirmative duty to address," such as conflicts between vocational expert testimony and the Dictionary of Occupational Titles. *See Katrina Louise K. v. Saul*, Case No. 18-CV-208-JFJ, ECF No. 18 at 12. The Court agrees that challenged issue is distinguishable, and the Tenth Circuit does not appear to have meaningfully considered whether *Sims* extends to the ALJ-level of review. But there does not appear to be any other published Tenth Circuit decision limiting this language in *Hackett* or reaching a contrary result. *Cf. Shaibi v. Berryhill*, 883 F.3d 1102, 1109-10 (9th Cir. 2018) (imposing issue-exhaustion requirement at ALJ-level when claimants are represented by counsel). Accordingly, the most relevant published decision in the Tenth Circuit counsels against a finding of forfeiture.

## IV. Conclusion

Plaintiff did not forfeit her Appointments Clause by failing to exhaust the issue before the ALJ. The Commissioner does not dispute that the ALJ was not properly appointed under the Appointments Clause of the U.S. Constitution. Accordingly, the ALJ's decision is **REVERSED**

and the case is **REMANDED** for further proceedings before a constitutionally appointed ALJ.[8]  All other issues presented on appeal are **AFFIRMED.**

    **SO ORDERED** this 30th day of September, 2019.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**

---

[8] The proper remedy for an invalidly appointed ALJ is a new hearing before a properly appointed ALJ.  See *Lucia*, 138 S. Ct. at 2055.